UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT E. TATE,<br><br>        Plaintiff<br><br>        v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>        Defendant. | Case No. 5:15-CV-02581-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

Plaintiff Robert E. Tate ("Plaintiff") filed a complaint seeking review of Defendant Commissioner of Social Security's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB"). The parties filed briefs addressing disputed issues in the case [Dkt. 13 ("Pltf.'s Br.") & Dkt. 14 ("Def.'s Br.")]. The Court has taken the parties' briefing under submission without oral argument. For the reasons that follow, the Court affirms the decision of the Commissioner and orders that judgment be entered accordingly.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

In June 2012, Plaintiff filed an application for DIB, alleging that he became disabled as of November 1, 2008. [Dkt. 11, Administrative Record ("AR") 12,

1  212.] The Commissioner denied this claim for benefits initially and upon
2  reconsideration. [AR 12, 95-99, 101-05.] Hearings were held before
3  Administrative Law Judge ("ALJ") Joseph D. Schloss on January 27, 2014 and May
4  19, 2014. [AR 31-41, 44-56.] On May 30, 2014, the ALJ issued a decision denying
5  Plaintiff's request for benefits. [AR 12-23.]
6      Applying the five-step sequential evaluation process, the ALJ found that
7  Plaintiff was not disabled. *See* 20 C.F.R. § 404.1520(b)-(g)(1). At step one, the
8  ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the
9  alleged onset date. [AR 14.] At step two, the ALJ found that Plaintiff suffered from
10 the following severe impairments: obesity; depression/anxiety; hypertension;
11 irritable bowel syndrome (IBS); sleep apnea; and kidney disease, stage 3. [*Id.*] At
12 step three, the ALJ determined that Plaintiff did not have an impairment or
13 combination of impairments that meets or medically equals the severity of one of
14 the listed impairments. [AR 15]; *see* 20 C.F.R. part 404, subpart P, appendix 1.
15 Next, the ALJ found that Plaintiff had the residual functional capacity (RFC) for a
16 range of light work (citing 20 C.F.R. § 404.1567(b)). [AR 17.] Specifically, the
17 ALJ found that Plaintiff was able to: lift and carry 20 pounds occasionally and 10
18 pounds frequently; stand and/or walk 2 hours in an 8-hour workday for 30 minutes
19 at a time with a change of position to sitting; sit for 6 hours in an 8-hour workday;
20 climb ramps and stairs, bend, and stoop occasionally; perform non-public, simple,
21 repetitive tasks; and perform up to moderately complex tasks occasionally. [*Id.*]
22 The ALJ further found that Plaintiff was precluded from climbing ladders, ropes or
23 scaffolds and unable to perform jobs involving balancing, the use of vibratory tools
24 or instruments, moving machinery, or unprotected heights. [*Id.*] At step four, the
25 ALJ found that Plaintiff was unable to perform his past relevant work as an
26 operating engineer. [AR 21.] At step five, the ALJ determined that Plaintiff was
27 capable of performing other work that exists in significant numbers in the economy.
28 [AR 22.] Therefore, the ALJ concluded Plaintiff was not disabled. [AR 22-23.]

1  The Appeals Council denied review. [AR 1-3.]

## III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotation marks omitted); *see also Hoopai*, 499 F.3d at 1074.

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). In addition, "[a] decision of the ALJ will not be reversed for errors that are harmless." *Burch*, 400 F.3d at 679.

## IV. DISCUSSION

### A. The Medical Expert's Testimony

Plaintiff contends that the ALJ failed to properly consider the testimony of the non-examining medical expert, Dr. Stephen Wallach, concerning Plaintiff's symptoms and impairments. [Pltf.'s Br. at 4-8.]

Dr. Wallach testified that Plaintiff suffers from depression, anxiety, hypertension, IBS, obstructive sleep apnea, irregular heartbeat, and chronic kidney disease. [AR 45.] Dr. Wallach indicated that Plaintiff could "fall asleep during the day" because of obstructive sleep apnea, but found that Plaintiff did not have any physical limitations that met a listed impairment. [AR 45-46.] Dr. Wallach then opined that Plaintiff could stand for 2 hours in a day for 30 minutes at a time, sit for

6 hours at a time, and lift 10 to 20 pounds, but Plaintiff could not creep, crawl, kneel, work around machinery, balance, or use ladders. [AR 46.] Dr. Wallach explained that Plaintiff's weight contributed to his obstructive sleep apnea and that Plaintiff had been unable to utilize a C-PAP machine to treat the condition. [AR 47-48.] While Dr. Wallach noted that obstructive sleep apnea could lead to potential heart complications, he found that Plaintiff's irregular heartbeat was not a significant problem. [AR 18-19, 45, 48.] When asked about Plaintiff's IBS, Dr. Wallach responded, "he should be close to a restroom." [AR 48.] Dr. Wallach explained that IBS is a problem that causes people a lot of distress. [*Id.*]

The ALJ found that Dr. Wallach's testimony was "highly credible and consistent with the evidence as a whole." [AR 20.] He adopted Dr. Wallach's assessment of Plaintiff's work restrictions as the basis for Plaintiff's RFC. [AR 20, 48.] While the ALJ did not discuss Dr. Wallach's statements that Plaintiff could "fall asleep during the day" or that "he should be close to a restroom," he properly considered Dr. Wallach's assessment of Plaintiff's limitations and impairments in light of the record evidence. [AR 18-21, 46, 48]

Plaintiff contends that the ALJ erred by failing to specifically address Dr. Wallach's testimony that Plaintiff could fall asleep during the day and needs to be close to a restroom. [Pltf.'s Br. at 7.] Plaintiff argues that the ALJ should have developed the record to determine the impact of these restrictions on Plaintiff's RFC and ability to perform other work. [Pltf.'s Br. at 7-8.] Plaintiff's argument lacks merit.

In determining disability, the ALJ "must develop the record and interpret the medical evidence." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). The ALJ must "consider" the testimony of a non-examining medical expert in conjunction with other evidence of record. *See Beason v. Colvin*, 611 F. App'x 905, 906 (9th Cir. 2015) ("[b]ecause the medical expert neither examined nor treated the claimant, the ALJ was required only to 'consider' the expert's testimony in

conjunction with other record evidence"); *see also* 20 C.F.R. § 404.1527(b) (ALJ will consider medical opinion evidence "together with the rest of the relevant evidence"), (e) ("We consider all evidence from nonexamining sources to be opinion evidence"). However, the ALJ has a duty to develop the record further "only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

Here, in evaluating Plaintiff's claim of disability, the ALJ properly considered Dr. Wallach's non-examining opinion, along with the other evidence of record. *See Beason*, 611 F. App'x at 906; *see also* 20 C.F.R. § 404.1527(b), (e). First, although Dr. Wallach noted that Plaintiff could "fall asleep during the day" due to obstructive sleep apnea, he did not assess any work-related limitations based on this condition other than as identified in his testimony (e.g., standing for 2 hours in a day for 30 minutes at a time, sitting for 6 hours in a day, lifting 10 to 20 pounds, and no creeping, crawling, kneeling, working around machinery, balancing or using ladders). [AR 46.] The ALJ properly considered the restrictions assessed by Dr. Wallach and incorporated them into Plaintiff's RFC. [AR 17, 46.] Thus, the ALJ's RFC assessment was not inconsistent with Dr. Wallach's opinion regarding Plaintiff's obstructive sleep apnea and the ALJ had no obligation to further develop the record in this regard. Second, the ALJ reasonably considered and rejected Plaintiff's asserted need to be near a restroom. [AR 18, 21.] As discussed in more detail below, the ALJ discounted Plaintiff's testimony regarding the severity of his symptoms, as Plaintiff received infrequent and conservative treatment, had been able to work successfully for many years after being diagnosed with IBS, and presented with no nutritional deficits despite claiming to suffer from debilitating IBS-related diarrhea. [AR 18, 21, 37, 240, 306.] The ALJ also noted that the medical record showed that Plaintiff's IBS was stable. [AR 18, 21, 428.] Indeed, none of the reports from Plaintiff's treating or examining physicians indicated that

Plaintiff would need to be in close proximity to a restroom. The ALJ's decision not to credit Dr. Wallach's suggestion that Plaintiff should be close to a restroom was supported by substantial evidence in the record. *See*, *e.g.*, *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (ALJ is responsible for "resolving conflicts in medical testimony"); *see also Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (reviewing court may set aside ALJ's denial of benefits only when evidence does not reasonably support decision). Thus, the ALJ did not err in failing to further develop the record. *See Mayes*, 276 F.3d at 459-460 (rejecting the argument that the ALJ breached his duty to develop the record as an impermissible attempt to shift the burden of proving disability away from the claimant).

### B. Plaintiff's Subjective Complaints

Plaintiff asserts that the ALJ failed to state sufficient reasons for discounting his subjective symptom testimony. [Pltf.'s Br. at 8-12.] Plaintiff alleged that he was not able to work because of anxiety, panic disorders, arrhythmias, IBS, sleep apnea, depression, high blood pressure, high cholesterol, hypoglycemia, low testosterone, fatty liver, and pain. [AR 17-18, 233, 240, 261.] He claimed that he uses the bathroom ten or more times a day, experiences fatigue, pain, depression, mood swings, agoraphobia, extreme fear, and paranoia, has difficulty with concentration, comprehension, memory, stress, changes in routine, and personal care, and has problems walking, sitting, and breathing. [AR 17-18, 240, 261-62.]

If a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged and there is no affirmative evidence of malingering, the ALJ must offer "specific, clear and convincing" reasons to reject the claimant's testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (when the claimant has presented objective evidence of an underlying impairment and there is no evidence of malingering, the ALJ must provide "specific, clear and convincing reasons" to reject the claimant's testimony

6

about the severity of his symptoms) (citations and internal quotation marks omitted). "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284; *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (the ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony").

Here, the ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to cause some of Plaintiff's alleged symptoms, Plaintiff's allegations concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent alleged. [AR 18, 21.] Because there was no evidence of malingering, the ALJ was required to articulate specific, clear, and convincing reasons to support the negative credibility finding. *See Molina*, 674 F.3d at 1112. As discussed below, the ALJ offered legally sufficient reasons to support the adverse credibility determination.

The ALJ found that Plaintiff's symptoms and limitations were not as severe as alleged, as he had "relatively infrequent" medical visits. [AR 18.] In particular, the ALJ noted minimal evidence of medical treatment around Plaintiff's alleged onset date of January 31, 2009. [AR 18.] The record shows Plaintiff saw a physician in December 2008 and January 2009, for fatty liver, hypertension, hyperglycemia, and arrthymias. [AR 18, 80, 279-82.] Plaintiff's exams were generally within normal limits and there were no other treatment records for the remainder of 2009. [AR 279-82.] In May 2010, a physician wrote a brief note excusing Plaintiff from jury duty. [AR 291.] In March 2011, a physician prescribed Plaintiff medication, ordered lab tests, and reported a normal physical examination. [AR 292.] The record does not reflect that Plaintiff received any additional medical treatment for his alleged disabling impairments until 2012. [AR 295, 323.] Thus, the ALJ properly relied on the gaps in medical treatment in discounting Plaintiff's credibility. *See Molina*, 674 F.3d at 1113 ("in assessing a claimant's credibility, the

ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment") (internal citations and quotation marks omitted). Further, the ALJ found that the medical treatment that Plaintiff received was "routine and conservative," consisting primarily of periodic office visits for medication monitoring. [AR at 18, 21]; *see Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (explaining that an ALJ may rely on the fact that only conservative care has been prescribed in making credibility determination); *Parra*, 481 F.3d at 751 ("evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"). Accordingly, the ALJ properly relied on the infrequent and conservative nature of Plaintiff's treatment in discounting his credibility.

The ALJ found that the objective medical evidence was inconsistent with Plaintiff's allegations that he always needed to be close to a restroom. [AR 18, 21, 37.] Although Plaintiff claimed that IBS caused diarrhea and symptoms requiring use of a restroom ten or more times a day, the ALJ noted that Plaintiff was not malnourished. [AR 37, 240.] Rather, Plaintiff, who was 315 pounds at the time of the hearing, was significantly overweight. [AR 18, 47.] The ALJ also noted that Plaintiff's physician described Plaintiff's IBS as "stable." [AR 18, 21, 428.] Thus, in this case, the absence of objective medical evidence to support Plaintiff's subjective complaints was a specific, clear and convincing reason to discount Plaintiff's subjective statements. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

The ALJ also determined that Plaintiff's testimony as to the severity of his IBS and obstructive sleep apnea was undermined because he had been diagnosed with these conditions long before his alleged onset date and was able to consistently

engage in substantial gainful work activity despite these conditions. [AR 18, 306-07.] This was a valid reason for finding Plaintiff less than fully credible. *See Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("In weighing a claimant's credibility, the ALJ may consider . . . inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.").

Finally, the ALJ discounted Plaintiff's credibility because Plaintiff received unemployment benefits and looked for work after his alleged onset date. [AR 18.] At the hearing, Plaintiff testified that he received approximately $22,950 in unemployment benefits between 2011 and 2012 and had looked for work during that period. [AR 34-35.] The ALJ noted that Plaintiff collected unemployment benefits in the last two quarters of 2011 and the first two quarters of 2012. [AR 14, 221.] Under these circumstances, the ALJ reasonably discounted Plaintiff's credibility given his continued receipt of unemployment benefits and active search for work. [AR 18, 21]; *see Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Continued receipt of unemployment benefits does cast doubt on a claim of disability, as it shows that an applicant holds himself out as capable of working."); *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988); *but see Carmickle*, 533 F.3d at 1161-62 (finding that a claimant's receipt of unemployment benefits does not necessarily constitute a legally sufficient reason for an adverse credibility determination when the record "does not establish whether [the claimant] held himself out as available for full-time or part-time work."). But even if the ALJ erred in relying on this factor, the error was harmless because he provided other specific, clear, and convincing reasons for discounting Plaintiff's credibility. *See Carmickle*, 533 F.3d at 1162-63 (ALJ's reliance on erroneous reasons for adverse credibility determination harmless when the ALJ's "remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence in the

9

record"). Accordingly, remand is not warranted.

## CONCLUSION

For the reasons reported above, **IT IS ORDERED** that:

(1) the decision of the Commissioner is AFFIRMED; and

(2) judgment shall be entered dismissing this action.

DATED: October 17, 2016          _____
                                 GAIL J. STANDISH
                                 UNITED STATES MAGISTRATE JUDGE